which it is not, in order to enable the revenue officers to levy upon it a rate of duty which that other article which it is not pays. Now this is a very extraordinary species of legislation, and there is no reason why we should be surprised to find that congress has confided the exercise of those peculiar functions to a very high officer of the government. When congress has expressly confined that exercise, as it has by the language of this act, to the secretary of the treasury, I do not think that the courts are warranted in finding that power in any other officer. I do not mean by that to suggest for one moment that under the phraseology of this act it is the duty of the secretary of the treasury to himself examine the packages of goods, to handle or see their contents; but, having been informed and advised as to the facts in the same way in which he is informed and advised upon any facts upon which he is required to pass, by the examination and report of such trustworthy subordinates as he may select, the final classification of the particular articles is one to be made by him. The return here distinctly finds as a fact that he reached no such conclusion, nor undertook to do so, in the case of the importations here involved. For that reason, I think that his action cannot be sustained. The decision of the board of general appraisers, therefore, in this case is reversed.

---

## In re STERNBACH et al.

(*Circuit Court, S. D. New York.* January 27, 1891.)

CUSTOMS DUTIES.
    The tariff act of October 1, 1890, entitled "An act to reduce the revenue and equalize duties on imports, and for other purposes," *held* to be constitutional.

At Law.

The firm of H. Herrman, Sternbach & Co. on October 7, 1890, imported certain merchandise by the steamer Fulda into the port of New York, which was returned by the appraiser of the port on the invoice as "colored cottons and manufactures of flax." The collector of the port of New York assessed duty on this merchandise under the provisions of paragraphs 348 and 371 of the act of October 1, 1890, entitled "An act to reduce the revenue and equalize duties on imports, and for other purposes." The importers duly protested against such liquidation, assessment, and ascertainment of duties by the collector. In their protest they claimed that the merchandise was dutiable under paragraph 320 of Schedule I of the tariff act of March 3, 1883, for the reason that the said act of October 1, 1890, was unconstitutional and void. An appeal was duly taken by the importers from the decision of the collector to the board of United States general appraisers, under the provisions of the act of June 10, 1890, entitled "An act to simplify the laws in relation to the collection of the revenues." The board of general apprais-

ers affirmed the decision of the collector, and held the act of October 1, 1890, to be constitutional. The importers applied to the United States circuit court for the southern district of New York for a review of the questions of law and fact involved in such decision, whereupon, and on the order of the court, said board returned to the court the record and the evidence taken by them, together with a certified statement of the facts involved in the case, and their decision thereon.

Upon the hearing counsel for the importers contended as follows: (1) That the act of March 3, 1883 is not, and never has been, repealed; (2) that the act of October 1, 1890, never passed the house of representatives and senate; (3) that the bill which passed the house of representatives and senate was never presented to the president, as required by the constitution, and has never been signed or approved by him; (4) that the bill which was presented to the president, and purporting to be signed by him on the 1st of October, 1890, and now on file in the state department at Washington, never in fact passed the house of representatives or the senate of the United States, as presented to said president, but was other and different from any bill which actually passed said house of representatives and senate; (5) that the alleged act of October 1, 1890, is unconstitutional and void by reason of the third section thereof; (6) that the power purporting to be given to the president by said section to continue to suspend and impose duties, or to do either of said acts, is a power vested by the constitution in congress alone, and cannot be lawfully delegated to the president; (7) that the said alleged act of October 1, 1890, is unconstitutional and void by reason of the provisions contained in section 1 of Schedule E, par. 231, of said act, relating to bounties on sugar; (8) that congress had no power to direct, enact, or authorize the payment out of moneys in the treasury, raised by taxes or duties or otherwise, of a bounty of two cents a pound, or of any other sum whatever, nor had congress any power to authorize the secretary of the treasury to draw warrants on the treasurer of the United States for such sums as may be necessary to make payments of bounties, as provided in said act, under section 1, par. 235, of said act, nor to impose the duties mentioned in the act for the purpose, in whole or in part, of raising moneys to pay such bounties.

The United States district attorney in reply contended: (1) The act of October 1, 1890, is an entirely new tariff act, repugnant in many of its provisions to the former tariff act of March 3, 1883, and covers the whole subject of the earlier act, and embraces new provisions, which plainly show that it was intended as a substitute for the prior act of 1883. When a statute covers the whole subject-matter of preceding statutes, it virtually repeals them without any expressed repealing clause. *Butler* v. *Russel,* 3 Cliff. 251; *Daviess* v. *Fairbairn,* 3 How. 636; *Morlot* v. *Lawrence,* 1 Blatchf. 608; *U. S.* v. *Terra Cotta Vases,* 18 Fed. Rep. 508; *U. S.* v. *Tynen,* 11 Wall. 88; *Norris* v. *Crocker,* 13 How. 429; *U. S.* v. *Cheeseman,* 3 Sawy. 424; *King* v. *Cornell,* 106 U. S. 395, 1 Sup. Ct. Rep. 312. Section 55 of the act of October 1, 1890, moreover provides that "all laws and parts of laws inconsistent with this act are hereby repealed."

(2) The omission, accidental or otherwise, in the bill, as signed by the president, of a part of section 30, in relation to a drawback or rebate upon smoking and manufactured tobacco and snuff, did not affect the validity of the law. It related to a separate and severable subject. That which remained was complete in itself, and was capable of being executed wholly independent of the omitted clause. Both houses of congress passed all of the sections in the bill which the president signed. Moreover, the president signed the bill which came to him from congress after being engrossed, and submitted, as engrossed, to both houses of congress in the usual course of procedure. The bill as signed by the president was the same bill as was certified to him by the presiding officer of both houses of congress. It was therefore the same bill as finally acted upon by both houses of congress. (3) It is not an abdication of legislative power for congress to authorize the executive to suspend the operation of a law, under certain circumstances, by proclamation, with the legislative declaration that another law, fixed in its terms, shall thereupon go immediately into effect. This is not deemed a vesting of legislative power in the president; it is simply making a law, certain and fixed in its terms, operative upon a given contingency, the existence of which is to be determined by the president. The president does not legislate; he merely executes the law in the manner directed by congress. (4) For purposes of argument, if the two sections or clauses of the act of October 1, 1890, attacked by the importers in this action, were considered to be unconstitutional, it would be inconsistent with all just principles of constitutional law to adjudge other and independent sections of the same act void. The other sections of the act, although associated, are not connected with, or dependent upon, these two paragraphs. Constitutional and unconstitutional provisions may be contained in the same section, and yet be perfectly distinct and separable, although the first may stand, and the last fall. The point is not whether they are contained in the same section or the same act,—for the distribution of the sections or paragraphs is purely artificial,—but whether they are essentially and inseparably connected in substance. *Com.* v. *Hitchings*, 5 Gray, 482; *Willard* v. *People*, 4 Scam. 461; *Hagerstown* v. *Dechert*, 32 Md. 369; *People* v. *Bull*, 46 N. Y. 57; *People* v. *Kenney*, 96 N. Y. 294; Cooley, Const. Lim. (6th Ed.) pp. 210, 211; and see *Opinion of Board of United States General Appraisers* of December 15, 1890, G. A. 203. Statutes which are constitutional in part only will be upheld and enforced so far as they are not in conflict with the constitution, provided the allowed and prohibited parts are severable. *Packet Co.* v. *Keokuk*, 95 U. S. 80; *Bank* v. *Dudley*, 2 Pet. 526; *Duer* v. *Small*, 17 How. Pr. 201; *Golden* v. *Prince*, 3 Wash. C. C. 313. (5) In passing on the constitutionality of an act of congress, all the presumptions are in favor of the law, and courts will not pronounce an act unconstitutional unless its incompatibility is clear, decided, and inevitable. *Parsons* v. *Bedford*, 3 Pet. 433; *Sarony* v. *Lithographic Co.*, 17 Fed. Rep. 591; *U. S.* v. *Coombs*, 12 Pet. 72; *Fletcher* v. *Peck*, 6 Cranch. 87; *Butler* v. *Penn.*, 10 How. 402.

*Stanley, Clarke & Smith*, for importers.

*Edward Mitchell*, U. S. Atty., and *Henry C. Platt*, Asst. U. S. Atty., for collector.

LACOMBE, Circuit Judge, *(orally.)* In this case the board of general appraisers affirmed the decision of the collector. This court affirms their decision.

---

## UNITED STATES *v.* KEOKUK & H. BRIDGE CO.

*(District Court, S. D. Iowa, E. D.* February 7, 1891.)

1. **BRIDGES—OBSTRUCTIONS TO NAVIGATION—REMOVAL BY SECRETARY OF WAR.**
 A bridge having been built and maintained in accordance with the requirements of an act of congress, the secretary of war cannot declare it an obstruction to navigation, and require it to be changed, remodeled, or rebuilt, under the act of congress of August 11, 1888, (25 U. S. St. at Large, p. 424, §§ 9, 10,) providing that when he shall have reason to believe that any bridge is an obstruction to free navigation, or where there is difficulty in passing the draw-opening or raft-span, the secretary of war shall give notice requiring the bridge to be altered, so as to render navigation through or under it free, easy, and unobstructed, and that the owner of any such bridge shall be liable to a penalty for willfully failing to remove the bridge, or to cause the necessary alterations to be made.

2. **SAME—NOTICE OF ALTERATIONS REQUIRED.**
 Assuming that sections 9 and 10 are valid in any case, the notice given by the secretary of war must point out what alterations are required to be made; and a notice is not sufficient which requires the owners "to so alter said bridge as to render navigation through or under it free, easy, and unobstructed," though the notice contains a recital that "the bridge was an obstruction to free navigation by reason of its location, which at stages of water permitting navigation over the Des Moines rapids renders difficult the passage of boats, rafts, etc., through its west draw rest pier."

3. **STATUTES—REPEAL—RELEASE OF PENALTIES.**
 By the express provision of Rev. St. U. S. § 13, the repeal of a statute does not release any penalty, forfeiture, or liability incurred unless the repealing act so provides.

At Law. Action to recover penalties under provisions of sections 9 and 10 of the act of congress of August 11, 1888. On demurrer to petition.

*Lewis Miles*, U. S. Dist. Atty., for plaintiff.

*H. H. Trimble*, *W. J. Roberts*, and *James C. Davis*, for defendant.

SHIRAS, J. In the act of congress of August 11, 1888, (25 St. at Large, p. 424,) it is provided:

"Sec. 9. That whenever the secretary of war shall have good reason to believe that any railroad or other bridge now constructed, or which may be hereafter constructed, over any of the navigable water-ways of the United States is an obstruction to the free navigation of such waters by reason of insufficient height, width of span, or otherwise, or where there is difficulty in passing the draw-opening or the raft-span of such bridge by rafts, steamboats, or other water-craft, it shall be the duty of said secretary to give notice to the persons or corporations owning or controlling said bridge to so alter the same as to render navigation through or under it free, easy, and unobstructed; and in giving such notice he shall prescribe in each case reasona-